Council on the matter of Stewart v. United States SEC. Case number is 24-1041. I'm sorry? High schools for seniors are not engaged with us in the next action. So we'll let them get their things together. Thank you all for visiting us. I won't take it personally. We have a docket full of interesting cases, so they didn't miss out this time, but I'm sure they'll be disappointed when they learn later how exciting this one was. All right, Mr. Slovic, you've reserved two minutes for rebuttal. All right. Thank you, Your Honor. When you're ready. Thank you, and may it please the Court, David Slovic on behalf of Petitioner Sean Stewart. Mr. Stewart asked the Court today to consider how some comparatively old Second Circuit case law should be applied to new SEC remedies, and at the same time how a new Second Circuit decision ought to be applied to some comparatively old SEC remedies. But whatever frame of reference the Court chooses, the Commission's sanctions order should be set aside for any one of four reasons. First, the sanction the Commission imposed on Mr. Stewart is contrary to this Court's case law. Second, the sanction is unsupported by the factual record in the case. Third, the Commission failed to evaluate the proportionality between its chosen sanction and Mr. Stewart's underlying violation. And fourth, the Commission failed to evaluate what impact its sanction would have on Mr. Stewart's livelihood in the future. This Court reviews the Commission's sanctions order under an abuse of discretion standard. An abuse of discretion will involve either a sanction palpably disproportionate to the violation or a failure to support the sanction with a meaningful statement of the findings and conclusions on all of the material issues of fact, law, or discretion presented on the record. That was this Court's determination in McCarthy v. SEC. In McCarthy, the Court noted that in deciding whether the Commission has abused its discretion, the Court's foremost consideration is whether the sanction protects the trading public from further harm. The Commission has failed to meet this standard here because it cannot show that an investment advisor harmed, I'm sorry, that Mr. Stewart harmed the investing public in the past, or that Mr. Stewart, if he were barred from serving as an investment advisor in the future. Why isn't the conviction for at least five instances of insider trade, why doesn't that provide a sufficient basis for concluding there's a risk of harm to the public? For a number of reasons. The first reason is a legal reason, and that's because the harm that underlies that violation is not a harm done to investors. For example, in this Court's 2023 decision in SEC v. Govill, the Court held that a fraud that does not qualify. But Govill, that was a disgorgement case, right? It was, Your Honor. So we are talking about, when we're talking about disgorgement, about identifying a very particular loss victim, right? It's different here. We're talking, here I think the theory is that insider trading undermines confidence in the market and affects investors in a more general way. Okay, so Govill, I understand that if this were a disgorgement case, we might have a different situation. But isn't that an important distinction? It turns out it's not an important distinction, because in both the case of the disgorgement and collateral bars, the statutory purpose is the same. It's to protect investors. And we know that both from this Court's decision in SEC v. Kavanaugh from 2006, which was a disgorgement decision, and also from this case, which the Commission admits the purpose of a collateral bar is to protect investors. Why wouldn't one assume that a person who's the tipper to someone who trades on inside information is taking advantage of investors who don't have that inside information? I mean, I know what their names are, but their existence is certain. Am I correct? It's not on this record. We don't know who those investors were. Do we have to know in order to know that they exist? I mean, you never have a transaction without somebody on the other side. That's correct, Your Honor. And there's two answers to that question. Certainly they exist. We don't know who they are here because there's no evidence in the record to say who they are. Well, if it was a disgorgement case, we'd have to know who they are because we'd have to know who to give the money to, right? That's correct. But even if we knew who they were in this case, it wouldn't matter. And that brings me back to this Court's decision in Govill. In Govill, the Court determined that a fraud that does not cause pecuniary harm in the context of an SEC enforcement action does not constitute a harm at all and cannot be the basis for a disgorgement award. That was a disgorgement case. More specifically, the Court determined that, quote, the right to make informed decisions about the disposition of one's assets is not property interest and offending that right does not result in pecuniary harm. And this was based on an earlier decision from the Supreme Court in Simonelli v. United States. There, the Supreme Court determined that, quote, the right to make discretionary economic decisions is not a traditional property interest of which an individual can be defrauded. Importantly for this case, the Supreme Court in Simonelli said that its ruling applied broadly across all the federal fraud statutes. And it was for that reason that this Court applied Simonelli's holding in a totally different context involving a completely different agency of the government, a completely different remedy, and a completely different statute. And that goes to Your Honor's question. There has to be some harm to an identifiable individual that is pecuniary before there is any harm at all, even if we know who those people are. Here the Commission did not even allege that there was pecuniary harm to any shareholder, much less make any effort to prove that there was harm. Would the situation be different if we knew who the counterparty was in each of these transactions? It would not. The fact of the identity of the counterparty in each of the transactions itself is meaningless. Unless the Commission can all – Doesn't insider trading harm the public generally? Doesn't it undermine the fairness of the securities market? It may cause a harm, but that harm is not cognizable under the federal securities laws. This is something that Justice Judge – excuse me – Rakoff pointed out in his United States v. Gupta decision in 2012. He said insider trading may cause harm to people, but that doesn't make it a violation of the federal securities laws. It is not fraud. The question is whether or not the harm that is caused to investors is a violation and cognizable under the federal securities laws. The question is whether there is a basis for the associational bar and whether the Commission is wrong in thinking that there could be a threat to the public and the security markets based on the prior instances of insider trading. Why is that an abuse of discretion? It's an abuse of discretion for two reasons. First of all, the factual matter is, Your Honor, there's absolutely no record in the evidence that there was any harm. There is no record evidence. This is undisputed. As a matter of fact, I made this argument repeatedly in my opening brief and gave the Commission an opportunity to point out to me where the harm was. They couldn't do that. They waived that decision. Were the sentencing guidelines not based – isn't the offense level calculated based on a loss or a harm? No? Just – Yes, and it's important that we differentiate liability from remedies. They're different. Your Honor noted, why is it that there isn't some interest to be protected there? The answer is that that's not the harm to be protected. The purpose of looking at a remedial sanction from the SEC, as this Court said in McCarthy v. SEC, is to figure out whether or not the sanction imposed prevents future harm. Future harm. There's no evidence in the record that what Mr. Stewart did is going to cause any harm to investors in the future. And the reason is in part factual because there's just no evidence of that in the record. But more importantly, it's because he's a misappropriator and the violation that a misappropriator commits that makes his conduct cognizable under the federal securities laws is that he takes information from the source of the information, not that he misappropriates information or otherwise harms investors. And that's the difference. Here are the entities that Mr. Stewart took information from were his former employers, J.P. Morgan and Perella Weinberg. He owed no duty to investors. We know that from this Court's decision in SEC v. Obis. We know that from this Court's decision in Moss v. Morgan Stanley. We know it from the Supreme Court's decision in Sciarella v. United States. The Commission doesn't even contest that in this case. And so if there was no showing of harm to an individual in the past, right, because there's nothing that says that Mr. Stewart harmed any individual investors, and the Commission has failed as a matter of fact and as a matter of law to show that he could be a harm or a danger to them in the future, the Commission has failed to meet its burden on an abuse of discretion standard, which is, again, there has to be some showing that the remedy that it's imposing will protect investors in the future. The only remedy we're thinking about here is the bar on your client serving as an investment advisor, correct? That's right, Your Honor. I should know this, but to become an investment advisor, you have to fill out forms and file papers with the SEC. Am I correct? You do, Your Honor. Has he done that? He has not, and there's a bit of a distinction here because if Mr. Stewart in the future were to act in the investment advisory world, let's say that, he probably wouldn't be registered as an investment advisor, which is what Your Honor is alluding to. Yes, that's what I'm asking. He would be what's called an associated person with an investment advisor. So there would be some firm, right? That would have the license. That would have the license. He as an individual would just be associated with that firm, but the bar applies not only to registered investment advisors, which is what Your Honor is referring to, but also to individuals who seek to become associated. The bar bars both of those categories of individuals. And if your client wished to act in the latter capacity, would he have to make some application to the SEC and get approval from the SEC? I believe it would be an application to FINRA, but the rule that would prohibit him. But you're correct. The rule that would prohibit him is an SEC rule, and it's the rule that we're talking about today. It's the bar that would prohibit him from becoming or becoming associated with an investment advisor. That's just a matter of statute under the federal securities laws. Could a judge consider that the odds that somebody who served a couple years in prison for securities abuse is extremely unlikely to be able to either get a job or to get FINRA approval, and therefore the bar doesn't have any appreciable effect on his livelihood? You're right. The bigger hammer here, of course, is the fact that Mr. Stewart is now a felon, and that is a substantive matter of bar to a lot of things. The difference is that there are many firms that are registered as investment advisors but that employ people to do all kinds of things that aren't really investment advisory services. So, for example, many subsidiaries of banks are duly registered as a broker-dealer and an investment advisor and a futures commission merchant, all within the same entity. It's not just the people who are performing investment advisory services who are barred in that instance. It's anybody who works at that entity. So if Mr. Stewart were to seek to become affiliated with an investment advisor firm, even though he wasn't going to be an investment advisor, he would still be barred, no matter what he was doing. There's an exception for, you know, secretarial-type help, right, things that are non-substantive jobs, but pretty much everything else. If he was doing research, for example.  Correct. Correct. There's a very narrow definition of what constitutes investment advisory services. He certainly was not doing that at J.P. Morgan and Perella Weinberg, and in the future he wouldn't be doing that at an investment advisor if he were to become associated with one. Thank you. Thank you. Counsel, you're reserved two minutes, so we'll see you in ten minutes. Thank you. Thank you. Counsel, when you're ready. May it please the Court, Arjit Ramkumar for the Securities and Exchange Commission. This is a straightforward case. The commission found that because Sean Stewart repeatedly misappropriated confidential information and then lied about his behavior to cover his tracks, he was unfit to serve in the fiduciary role of an investment advisor where he would have unfettered access to confidential client information. That conclusion was not an abuse of the commission's discretion. Accordingly, the petition for review should be denied. I welcome the Court's questions. Mr. Slavik is arguing that he might not function in a fiduciary role at all. He might just work doing research or compiling data for a firm that has a license to perform investment advisory roles. So I guess my broader question is what kind of inside information is he likely to get a hold of and what is the risk to the public if he's not actually giving advice to investors? The commission articulated the specific risks that Mr. Stewart would pose if he was associated with an investment advisor on page 575 of the appendix, and there are two discrete reasons. The first is that investment advisors routinely access all types of confidential information, and Mr. Stewart repeatedly misappropriated confidential information in the past. The second is that investment advisors are fiduciaries, and Mr. Stewart repeatedly violated duties that he owed to his former employers. Would the commission be justified in barring somebody from any role in the securities industry based on a finding that they're a person of bad character? Or would it have to be something more? Because it sounds like he's being barred from everything on the theory that he committed crimes, and therefore he's a person of bad character. I would hesitate to embrace such a categorical rule because the issue of whether an associational bar is necessary is such a fact-intensive inquiry. But what I would say is that in this particular case, the commission considered all of the Stedman factors and found that each factor supported its decision to impose an associational bar, and I'm happy to walk through each of those factors if it would be helpful. Is everybody who works for an investment advisor for a company or bank that has a license to perform as an investment advisor, is every one of the people who work there other than administrative secretarial help in a fiduciary role? What the commission articulated below is that Mr. Stewart would be in a position where he would be associated with someone who is acting as a fiduciary and would be able to access confidential information in that role. Thank you. I'm sorry. Are there exceptions to the ban? I mean, would he be able to work for an advising firm in any capacity? I thought counsel on either side said that there were some exceptions. So in this particular case, as the commission noted below, Mr. Stewart only challenged the imposition of an investment advisor bar. The commission made that point on pages 572 and 577 of the appendix. And so the only issue before this court is whether the imposition of an investment advisor bar was an abuse of the commission's discretion. Does that mean he would not be able to take any position with any investment advising firm? I mean, that's the question. I'm only talking about investment advising firms. Could he take a clerical position at an investment advising firm? So that would be the effect of the investment advisor bar. It would be an absolute bar. He would not be able to. Yes. Thank you. On the theory that, well, let's say he took an IT position. But he would be able, your argument would be he would be able to access the records of individual investors and other matters of potential, potentially confidential information. That is the reasoning that the commission articulated below, yes, Your Honor. Thank you, counsel. Mr. Slavik, you reserve two minutes for rebuttal. Thank you, and may it please the Court. Counsel for the SEC alluded to the fact that Mr. Stewart had some sort of fiduciary role to shareholders in the companies in which the unlawful trades took place. That is absolutely not true. I think what he said was that he's someone the SEC has determined should not be in a fiduciary role. He also said that, Your Honor. You're right. The first thing that he alluded to was that there was some fiduciary relationship that he violated, which is what the commission used to justify the collateral bar. That's just not true. We know that from SEC v. Obis' court's decision. We know that from Moss v. Morgan Stanley. And we know it from United States v. O'Hagan, which is a case the commission relied on in its opposition brief. There the Supreme Court said that, quote, the misappropriation theory outlaws trading. Even assuming there was no fiduciary duty, the record shows that he lied to his employer? Correct, which could go to whether or not he had liability as a misappropriator in the first place. And he did. We don't challenge liability. But it supports the commission's thinking that he presents a risk if he's dishonest. If you put him in a position where he has access to confidential information, the commission is concerned. And isn't that concern reasonable? It may be reasonable, but it's not dispositive and it's not the test. If it's reasonable, how is it an abuse of discretion? It's an abuse of discretion because the court's – the commission's job is not to show that there is some risk. The commission's job – The record indicates that he continued to engage in insider trading violations even after he learned that FINRA had commenced an investigation. Correct. And nonetheless, the record does not show that anything that Mr. Stewart did caused any harm to investors. That's the test. The test we know from McCarthy is, was there harm to investors in the past? And more importantly, is the bar that the commission chooses going to prevent harm to investors in the future? And there's just absolutely nothing in the record that shows that. Thank you, counsel. Thank you. I will take the matter under submission.